UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOSEPH FISHER,

                              Petitioner,

            -against-

SUPERINTENDENT,

                              Respondent.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:__ 11/20/2013

12-CV-06703 (JPO)(SN)

REPORT AND
RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

TO THE HONORABLE J. PAUL OETKEN:

        Joseph Fisher ("Fisher") filed this *pro se* petition for a writ of *habeas corpus* pursuant to

28 U.S.C. § 2254 (the "Petition" or "*Habeas* Petition"), alleging that he is being held in state

custody in violation of his federal constitutional rights and seeking to vacate his judgment of

conviction. In his Petition, Fisher raises six grounds for relief: (1) he was denied a speedy trial in

violation of his statutory and constitutional rights; (2) he was denied effective assistance of

appellate counsel; (3) his waiver of his right to appeal his sentence as excessive was not knowing

and voluntary; (4) his sentence was unlawful; (5) he was denied effective assistance of plea

counsel; and (6) his sentence was excessive.[1] Because the Court cannot review Fisher's

procedurally defaulted claims, and the Appellate Division of the New York Supreme Court, First

---

[1] In his *habeas* petition, Fisher requested a stay of the *habeas* proceedings until the Appellate Division
reached a decision on his Motion for Leave to Appeal the Appellate Division's decision on his writ of
error *coram nobis* and to allow him the opportunity to present a perfected petition. On May 23, 2013,
however, the Appellate Division denied Fisher's application for a certificate for leave to file an appeal.
Thus, the request for a stay on this ground is moot. In addition, having found all of Fisher's claims
exhausted or procedurally barred, the Court concludes a stay is unwarranted.

Department (the "Appellate Division") reasonably applied clearly established federal law, I recommend that Fisher's petition for a writ of *habeas corpus* be DENIED in its entirety.

## BACKGROUND

The following facts are derived from the parties' briefs and the transcripts of Fisher's court proceedings.

## I.  Introduction

On January 15, 2005, Fisher, without permission, entered the Manhattan apartment of a woman. Fisher ordered her to undress and get on the bed. Fisher pinned her down and attempted to have sexual intercourse with her, without her consent. When she resisted, Fisher struck her. The woman escaped from her apartment. A neighbor, hearing her screams, called the police. When the police arrived they found Fisher, intoxicated, in the woman's bed. The woman sustained a broken finger, arm and back bruises, and facial scratches.

## II.  First Plea Proceeding

On October 31, 2005, Fisher pled guilty to Burglary in the First Degree, N.Y. Penal Law ("Penal Law") § 140.30(2) ("count 1"), and Attempted Rape in the First Degree, Penal Law §§ 110.0, 130.35(1) ("count 2"), with a waiver of appeal. On November 23, 2005, Fisher appeared before the Honorable Budd G. Goodman for sentencing. Fisher was represented by Thomas Klein ("Klein"), a Legal Aid Society lawyer. Justice Goodman relied on the plea that was made and sentenced Fisher to a determinate prison sentence of seventeen years, followed by five years of post-release supervision for count one, and a fifteen-year prison term to run concurrently for count two. On November 24, 2009, the Appellate Division vacated this plea as a matter of discretion in the interest of justice on the ground that it had been coerced. People v. Fisher, 890 N.Y.S.2d 477, 480-81 (1st Dep't 2009).

2

**III.    Second Plea Proceeding**

On March 2, 2010, Fisher appeared with his attorney, Adam Freedman ("Freedman"),

before the Honorable Thomas Farber in New York County Supreme Court (the "trial court").

The government offered a prison sentence of 14 years on a plea to Burglary in the First Degree,

count 1, and Attempted Rape in the First Degree, count 2, with a waiver of appeal.

Counsel for Fisher stated that after five years in state prison, Fisher had "clearly seen the

error of his ways." (Plea Transcript, March 2, 2010, ("Ex. H"),[2] at 2:22-23.) He was in his early

fifties and would remain imprisoned until his sixtieth birthday. Counsel noted that the events

were alcohol related and that the complaining witness was also allegedly intoxicated. He asked

the court to consider a prison sentence of 11 years. The court responded that it would give no

sentence less than 17 years without the government's consent. After an off-the-record discussion

at the bench, the government recommended a 13-year prison term with a waiver of appeal.

Justice Farber asked Fisher if he "wish[ed] to plead guilty to Burglary in the First Degree

and Attempted Rape in the First Degree to satisfy the charges in this case, with the understanding

that [the] sentence will be 13 years on each of those counts, time to run concurrently, and five

years post-release supervision." (Ex. H at 5:7-14.) Fisher replied, "Yes, sir." (Id. at 5:15.) Justice

Farber also asked Fisher if he had fully discussed the matter with his attorney. Fisher responded

that he had. When asked if the plea was forced or conditioned on any promise (other than the

promised sentence), Fisher responded, "No, sir." (Id. at 5:19-6:1.) Justice Farber asked Fisher if

he understood that he had a right to a trial on this matter and was not required to plead guilty.

Fisher responded, "Yes, sir." (Id. at 6:2-7.) Justice Farber then stated, "[w]hatever it was that the

---

[2] All exhibits in this opinion refer to those submitted with the Answer to the Petition for a Writ of *Habeas Corpus*.

prior Judge told you about sentencing and possibilities of sentencing following the trial and anything else, put that completely out of your mind. You're in front of a different Judge. It may even be me who tries the case." (Id. at 6:16-20.) Justice Farber explained the difference between a plea and a trial, including what would need to be proved at trial for a conviction. He informed Fisher that attempted rape, as a sex crime, is a registerable offense. He explained that under certain circumstances intoxication can be used to negate intent and asked Fisher if he had discussed this with his lawyer. Fisher replied, "Yes. Yes, sir." (Id. at 9:16.)

Justice Farber read the following charge: "on January 15, 2005, at 6:00 in the morning, that you knocked on a woman's door, a stranger; that you walked into her apartment and forced her to undress; that she escaped and you fought with her, and in the course of that fight, that you caused her physical injury and that you were attempting to have sexual intercourse with her without her consent by forcible compulsion. Is that true?" (Id. at 9:17-25.) Fisher replied, "Yes." (Id. at 10:1.)

Justice Farber asked Fisher if he understood that as a condition of the plea, he was giving up his right to appeal his conviction.

| The Court: | So, at this point, this plea completely ends any appellate rights that you have with respect to plea or sentence. |
|---|---|
| The Defendant: | No, I'm sure that this – |
| The Court: | You understand that? |
| The Defendant: | Yes. |

(Id. at 10:14-19.) Justice Farber followed up with a further explanation that while normally Fisher would have a right to appeal his conviction, by entering the plea, Fisher was giving up that right to appeal. Fisher responded that he understood and had fully discussed this with his attorney. Fisher executed the waiver.

4

Justice Farber then explained that even though he presumed Fisher had been adjudicated a predicate felon on the last date, he should perhaps be adjudicated again. The clerk of the court stated that "[o]n July 31, 2003, in the County Court in Westchester County in the State of New York, you were convicted of a felony of Burglary in the Third Degree." (Id. at 11:21-23.) When asked if he wished to challenge any allegations or the constitutionality of the statement, Fisher replied, "No." (Id. at 12:2-7.) The clerk found the defendant to be a second felony offender.

After hearing the charge, Fisher pled guilty to Burglary in the First Degree and Attempted Rape in the First Degree.

## IV.    Sentencing Hearing

On March 23, 2010, Fisher appeared before Justice Farber for sentencing. (See Sentencing Transcript ("Ex. I").) Both the government and Fisher relied on the promised sentence of 13 years' imprisonment followed by five years of post release supervision. Upon being asked if he wished to say anything else, Fisher stated, "No, Judge. I think it was pretty much cleared up my bad acts, he made me sound a lot better than Ms. Gallo made it sound, the ugliness, but, no, it's fine." (Ex. I at 4:22-25.) Justice Farber sentenced Fisher to a prison term of 13 years followed by five years of post release supervision.

## V.    Fisher's Direct Appeal

In December 2010, Fisher, through counsel, filed a brief in the Appellate Division. (See Brief for Defendant-Appellant ("Ex. J").) Counsel argued that his sentence was excessive and should be reduced in the interest of justice, and that the plea record was insufficient to establish that petitioner knowingly and voluntarily waived his right to challenge his sentence. In January 2011, Fisher filed a *pro se* supplemental brief in which he argued that he was improperly adjudicated a second felony offender, that his counsel was ineffective, and that his speedy trial

5

rights were violated. (See Supplemental Brief ("Ex. K").) On March 25, 2011, the appeal became

fully briefed and was submitted to the Appellate Division.

On June 23, 2011, the Appellate Division unanimously affirmed Fisher's judgment of

conviction. See People v. Fisher, 925 N.Y.S.2d 817 (1st Dep't 2011). The court held that Fisher

had made a valid waiver of his right to appeal, which foreclosed a claim that his sentence was

excessive, and found no other basis for reducing the sentence. Id. The court further noted that

Fisher's *pro se* claims were "unreviewable on the present record, and [were] without merit in any

event." Id.

## VI.    Leave Application

On July 8, 2011, Fisher, through counsel, filed for leave to appeal to the New York Court

of Appeals. (See Leave Application ("Ex. N").) Counsel enclosed copies of the briefs filed in the

Appellate Division, including Fisher's *pro se* supplemental brief, and asked the court to consider

all of the issues outlined in the briefs. On July 29, 2011, Fisher filed a separate *pro se* leave

application. (See Pro Se Leave Application ("Ex. O").) On August 30, 2011, the Court of

Appeals denied the application. See People v. Fisher, 17 N.Y.3d 816 (2011).

## VII.   Writ of Error *Coram Nobis*

In *pro se* papers dated October 30, 2012, Fisher filed a petition for a writ of error *coram*

*nobis* in the Appellate Division, claiming that his appellate counsel was ineffective for: (1)

failing to argue that he was improperly sentenced as a second felony offender; (2) failing to

argue that his constitutional and statutory speedy trial rights were violated; (3) failing to argue

that his sentence violated the prohibition on cruel and unusual punishment; and (4) failing to

raise an ineffective assistance of plea counsel claim.[3] (See Petition for a Common Law Writ of Error *Coram Nobis* ("Ex. S").) Fisher also claimed that "the court subjected [him] to cruel and unusual punishment" by wrongfully designating him a second felony offender under Penal Law 70.06(1)(b)(i). The prosecution opposed Fisher's petition, and on January 3, 2013, after "due deliberation" on the submitted papers, the Appellate Division denied Fisher's petition. (See Order of the Appellate Division on the *Coram Nobis* Petition ("Ex. U").) The Appellate Division interpreted the motion as an attack on Fisher's first appellate counsel, Noah Kinigstein ("Kinigstein"), and his second appellate counsel, Abigail Everett ("Everett"). Fisher sought leave to appeal the denial of the motion, (Application for Leave to Appeal ("Ex V")), and on May 23, 2013, the Appellate Division denied permission to appeal, finding no question of law presented that ought to be reviewed by the Court of Appeals.

## VIII.   Fisher's Federal *Habeas Corpus* Petition

On August 23, 2012, Fisher filed this *pro se* petition for a writ of *habeas corpus*. On October 9, 2012, the Honorable J. Paul Oetken referred Fisher's petition to a magistrate judge for a Report and Recommendation. On October 11, 2012, the petition was reassigned to my docket. On March 7, 2013, Fisher filed a supplemental brief. On March 19, 2013, respondent filed an opposition. On June 12, 2013, Fisher filed a reply, and the petition became fully briefed.

---

[3] In his *coram nobis* petition, Fisher may be arguing that his plea counsel was ineffective for failing to request discovery and evidentiary hearings rather than arguing that his appellate counsel was ineffective for not raising an ineffective assistance of plea counsel claim for these alleged errors. Because Fisher's claim regarding plea counsel cannot survive, reasons for which are set forth below, the Court will liberally construe Fisher's *coram nobis* petition to be a claim of ineffective assistance of appellate counsel for failing to raise plea counsel's alleged errors. See Roldan v. Racette, 984 F.2d 85, 87 (2d Cir. 1993) (federal courts are to construe *pro se* litigants' *habeas* petitions liberally); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (*pro se* litigants' complaints held to less stringent standard).

**DISCUSSION**

**I.     Timeliness**

It is uncontested that Fisher's *habeas* petition is timely. The Antiterrorism and Effective

Death Penalty Act (the "AEDPA") requires a state prisoner whose conviction has become final

to seek federal *habeas corpus* relief within one year. 28 U.S.C. § 2244(d)(1)(A). This one-year

period serves the "well-recognized interest in the finality of state court judgments." Duncan v.

Walker, 533 U.S. 167, 179 (2001). A petitioner's judgment becomes final 90 days from the date

the New York State Court of Appeals denies leave to appeal – *i.e.*, after the "period to petition

for a writ of *certiorari* to the United States Supreme Court." Pratt v. Greiner, 306 F.3d 1190,

1195 & n.1 (2d Cir. 2002). The Court of Appeals denied Fisher's leave application on August 30,

2011. Because Fisher did not seek a writ of certiorari to the United States Supreme Court, the

judgment of conviction became final on November 28, 2011, 90 days after the Court of Appeals'

denial. Fisher had until November 28, 2012, to file his *habeas* petition. Accordingly, Fisher's

petition, filed August 23, 2012,[4] is timely.

**II.    Exhaustion**

   **A.  Statement of Law**

Before a federal court may review a petition for a writ of *habeas corpus*, a petitioner

must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A). See also O'Sullivan v.

Boerckel, 526 U.S. 838, 845 (1999) (to exhaust a claim, a petitioner must "invoke[] one

complete round of the State's established appellate review process" before bringing the same

---

[4] Fisher's *habeas* petition was dated August 23, 2012. It was filed with the Court on September 4, 2012.
*Pro se* papers for incarcerated *habeas* petitioners are deemed filed on the date they are given to
correctional authorities for mailing to the court. See Houston v. Lack, 487 U.S. 266, 270, 276 (1988).
Therefore, the relevant date for determining timeliness is August 23, 2012.

claim in federal court). A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear his claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

To fairly present his claims, a petitioner may not rely solely on general principles of fairness, and instead must refer to specific constitutional provisions or concepts. See Reid v. Senkowski, 961 F.2d 374, 376 (2d Cir. 1992) (minimal reference to the constitution satisfies the exhaustion requirement); see also De La Cruz v. Kelly, 648 F. Supp. 884, 888 (S.D.N.Y. 1986) (finding that petitioner alerted the state court of the constitutional aspect of his claims when he argued that the challenged ruling denied him a fair trial and cited the Fourteenth Amendment). The legal doctrine asserted in the state courts does not need to be identical to that raised in the habeas petition, but "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye v. Att'y Gen. of New York, 696 F.2d 186, 192 (2d Cir. 1982).

The Court of Appeals for the Second Circuit applies the "fair presentation" standard liberally, allowing that a state court may be deemed to be on notice of the constitutional nature of a claim even if the petitioner did not specifically quote the United States Constitution. Notice will be found when the appellate brief shows "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Ramirez v. Att'y Gen. of New York, 280 F.3d 87, 95 (2d Cir. 2001) (citing Daye, 696 F.2d at 194). This position protects petitioners who rely on

9

constitutional principles without citing "book and verse on the federal constitution," while ensuring that state courts have the opportunity to "pass upon and correct" alleged violations of federal rights. Picard v. Connor, 404 U.S. 270, 275, 278 (1971) (citations omitted).

**B.  Exhausted Claims**

Respondent concedes that three of Fisher's claims are exhausted: (1) denial of his statutory and constitutional right to a speedy trial;[5] (2) the ineffective assistance of both appellate counsel; and (3) the waiver with regard to sentence was not knowing and voluntary. In addition, the Court finds that a fourth claim is exhausted: violation of his Eighth Amendment right to be free from cruel and unusual punishment due to an unlawful sentence.

**1.  Denial of His Right to a Speedy Trial**

Fisher pled his speedy trial claim as a Sixth Amendment and due process violation in his *pro se* supplemental appellate brief. A properly filed *pro se* supplemental brief is sufficient to put the court on notice of the constitutional claims addressed therein. Reid, 961 F.2d at 376. Fisher's second appellate counsel, Everett, sought leave to raise this claim in her letter to the New York Court of Appeals by stating that the appellant requested that the court "consider and review all issues outlined in the briefs," and included the *pro se* supplemental brief. See Morgan v. Bennett, 204 F.3d 360, 371 (2d Cir. 2000) (letter asking the Court of Appeals to consider all issues raised in the Appellate Division was sufficient to exhaust all claims). Thus, Fisher's speedy trial claim was fairly presented to the highest state court available and is exhausted.

---

[5] While Fisher raised his statutory speedy trial claim to the highest state court, the Court will not consider it here as he waived his right to appeal when he pled guilty, and there is no basis for federal review of this statutory claim. The Court will focus solely on the constitutional claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law").

10

### 2.   Ineffective Assistance of Appellate Counsel

Fisher raised his ineffective assistance of appellate counsel claim in federal constitutional terms in his *pro se coram nobis* petition, noting that "appellate counsel was ineffective violating the standards of <u>Strickland v. Washington</u> . . . ." (Ex. S at 3.)  When the Appellate Division denied the petition, Fisher sought leave for review by the Court of Appeals upon "the brief filed therein and upon all the papers pleading and proceeding herein." (Ex. V.) On May 23, 2013, the Appellate Division denied Fisher's request. Therefore, Fisher's ineffective assistance of appellate counsel claim was fairly presented to the highest available state court and is exhausted.

### 3. Waiver of Excessive Sentence Appeal Was Not Knowing and Voluntary

Fisher's second appellate counsel argued in her appellate brief that Fisher did not knowingly and voluntarily waive his right to appeal his sentence as excessive. She invoked due process and cited Supreme Court law. Counsel also sought leave to raise this claim in her letter to the New York Court of Appeals, thereby fairly presenting to the highest state court Fisher's claim that his waiver was not knowing and voluntary as to his sentence. Fisher's waiver claim is exhausted.

### 4.   Unlawful Sentence

Respondent argues that Fisher failed to exhaust his claim that he was adjudicated a second felony offender. In Fisher's *pro se* supplemental appellate brief, he appears to argue that with regard to sentencing there was a difference between a violent and a non-violent felony under C.P.L. § 70.06[6]. He contended that if this distinction had been understood, he may have received a lesser sentence. Fisher did not assert this claim in language that would suggest a specific right protected by the constitution. <u>See e.g.</u>, <u>Acosta v. Giambruno</u>, 326 F. Supp. 2d 513, 521 (S.D.N.Y. 2004) (finding excessive sentence claim unexhausted because it was grounded

11

solely in state law); Cuadrado v. Stinson, 992 F. Supp. 685, 687 (S.D.N.Y. 1998) (finding a claim unexhausted for relying solely on state statutory grounds and not using language that called to mind Eighth Amendment or Equal Protection claims). Nor did he cite any cases containing constitutional analysis or use a key word like "excessive." See e.g., Diaz v. LeFevre, 688 F. Supp. 945, 947 (S.D.N.Y. 1988) (finding an excessive sentence claim exhausted because petitioner used the word excessive which "'ipso facto' calls to mind the Eighth Amendment").

Fisher, however, did note in his *coram nobis* petition that he had been subjected to cruel and unusual punishment because of his unlawful designation as a second felony offender. In his letter seeking leave to appeal the Appellate Division's decision, Fisher indicated that his request for review was "upon all the papers, pleading, and proceeding herein …." (Ex. V at 1.) While Fisher framed his concern as an ineffective assistance of appellate counsel for failing to raise this argument on appeal, (Ex. S at 4), he also identified his unlawful sentence as an independent claim: "[T]he court subjected appellant to cruel and unusual punishment by violating penal law 70.06(1)(b)(i) to enhance his sentence for treatment as a second felony offender, contrary to statute." (Ex. S at 2.) While *coram nobis* petitions have been sanctioned only for claims of ineffective assistance of appellate counsel, see People v. Gordon, 584 N.Y.S.2d 318 (2nd Dep't 1992), whether or not the Appellate Division could have considered Fisher's cruel and unusual punishment claim is a different question from whether he raised the claim in state court for purposes of exhaustion. See Aparicio v. Artuz, 269 F.3d 78, 87 n.1, 92 (2d Cir. 2001) (finding petitioner's claim of ineffective assistance of trial counsel to be exhausted by a *coram nobis* petition regardless of whether the state court could have properly entertained such a claim). Fisher, therefore, fairly presented his unlawful sentence claim to the highest state court, and it is exhausted.

Accordingly, Fisher's speedy trial claim, ineffective assistance of appellate counsel claim, invalid waiver claim, and unlawful sentence claim are all exhausted.

### C. Unexhausted Claims

Two of Fisher's claims are unexhausted: (1) ineffective assistance of plea counsel; and (2) excessive sentence.

### 1. Ineffective Assistance of Plea Counsel

Respondent argues that Fisher did not exhaust his ineffective assistance of counsel claim with regard to his plea counsel. It appears that Fisher's ineffective assistance of plea counsel claim in his *habeas* petition refers to both of his trial counsel: his first plea counsel for not informing him of a potentially dispositive defense, and his second plea counsel for being a court "crony," and for not conducting pre-trial discovery or requesting an evidentiary hearing.[6]

While Fisher's first appellate counsel raised the issue of ineffective assistance of plea counsel in his appellate brief, the conviction based on that plea was overturned and the case was remanded to the court for new proceedings. The Appellate Division's order vacating Fisher's first plea and reversing the judgment of conviction rendered a *habeas* petition as to that conviction moot. See Cnty of Los Angeles v. Davis, 440 U.S. 625, 631, 634 (1979) (stating that a case should be dismissed as moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome" (citation and internal quotation marks omitted)); Moloi v. Riley, 762 F. Supp. 36, 39 (E.D.N.Y. 1991) (holding that petitioner's argument was moot because the conviction from which he sought relief had already been

---

[6] It is unclear whether Fisher is asserting that both plea counsel should have requested an evidentiary hearing or only one of them. Because Fisher's claims against his first plea counsel are moot, as discussed below, the Court will liberally treat Fisher's claim as if it applies to his second plea counsel. See Roldan, 984 F.2d at 87.

reversed by the Appellate Division); Hayes v. Evans, 70 F.3d 85, 86 (10th Cir. 1995) (holding that petitioner's *habeas* action was moot because the state court had already granted the relief available through the federal court – reversal of his conviction and a new trial). Thus, this Court will not review any claims of ineffective assistance of counsel made by Fisher regarding his first plea counsel, Klein.[7]

Fisher's second appellate counsel did not raise a claim of ineffective assistance of counsel as to Fisher's second plea counsel, but Fisher did so in his *pro se* brief. He failed, however, to do so in federal constitutional terms. He stated that "the court-appointed lawyer feiled [sic] to prosecute on a more meritable defense (denial of motion)." (Ex. K at 5.) Fisher also stated that his second plea counsel was a "crony" of the court. (Ex. K at 14.)

Fisher does not provide any language or case citations to suggest that his ineffective assistance of plea counsel claim is based on federal constitutional law. He cites only to New York state law and the New York Bar's Code of Professional Conduct when making his arguments. While Fisher included the Sixth Amendment in his Table of Authorities, he makes reference to it in the brief only when discussing his speedy trial claims. And while Fisher does cite to a Supreme Court case on the duties of a prosecutor to seek justice, it is not in reference to his plea counsel. Fisher's claim of ineffective assistance of counsel as to his second plea counsel was not fairly presented to the highest state court in federal terms and is, therefore, unexhausted.

### 2.  Excessive Sentence

Respondent argues that Fisher did not exhaust his excessive sentence claim because he failed to raise it in federal constitutional terms to the highest state court. New York's Appellate

---

[7] For the same reason, the Court will not review any of Fisher's claims regarding prosecutorial or judicial misconduct during his October 2005 plea conviction. Such claims are moot in light of the Appellate Division's reversal of that conviction.

Division has discretion to reduce a sentence in the interest of justice. See C.P.L. §§ 470.15(3), (6)(b). Appealing to the state court's broad power to modify a sentence, second appellate counsel for Fisher argued in the appellate brief that Fisher's 13-year sentence should be reduced to eight, the minimum allowed under C.P.L. § 70.06. Appellate counsel emphasized that though the 13-year sentence was not an abuse of discretion, the court had broad power to modify unduly harsh or severe sentences given the circumstance. The brief did not cite to any federal cases or state cases relying on federal analysis. Nor did counsel use any language, such as "cruel and unusual punishment," to implicate a federal right. Thus, Fisher did not fairly present his excessive sentence claim to the highest state court, and it is unexhausted.

### D.  Procedural Default

A federal court "need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred" due to a state procedural rule. Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). This is because it "would be inconsistent with [§ 2254(b)], as well as with underlying principles of comity" to require a petitioner to exhaust a claim in state court if the results of further review are "predetermined." Castille v. Peoples, 489 U.S. 346, 350 (1989). In such a case, a petitioner no longer has "remedies available in the courts of the State" within the meaning of § 2254(b). Engle v. Isaac, 456 U.S. 107, 125 n.28 (1982). Accordingly, where a petitioner cannot resort to state court to present a constitutional claim, a federal court will deem the claim exhausted but procedurally defaulted. Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); Hayward v. Brown, 09 Civ. 6495 (LAK)(AJP), 2010 WL 2629037, at *26 (S.D.N.Y. July 1, 2010).

 "Dismissal for a procedural default is regarded as a disposition on the *habeas* claim on the merits." Aparicio, 269 F.3d at 90. Thus, "any future presentation of the claim would be a

second or successive habeas petition, requiring authorization … pursuant to 28 U.S.C. § 2244(b)(3)(A)." Id. (citing Carter v. United States, 150 F.3d 202, 205-06 (2d Cir. 1998)).

### 1.   Ineffective Assistance of Plea Counsel

Fisher's ineffective assistance of plea counsel claim may be deemed exhausted but procedurally defaulted. First, Fisher waived the right to appeal the issue of ineffective assistance of counsel when he signed a waiver at his second plea. Under New York law, "a defendant who admits guilt in open court may not later seek review of claims relating to the deprivation of rights that took place before the plea was entered." People v. Parilla, 8 N.Y.3d 654, 659 (2007) (citation and quotation marks omitted). The only way to raise such a claim in the face of the waiver is to demonstrate that plea counsel's conduct undermined the knowing and voluntary nature of the waiver. Id. at 660.

Fisher does not challenge the knowing and voluntary nature of his waiver with regard to the right to bring a claim of ineffective assistance of plea counsel. And, even broadly construing his waiver claim to include such an allegation, Fisher fails to show that counsel's behavior undermined the knowing and voluntary nature of his waiver. In determining whether a particular guilty plea was made intelligently, a court must assess whether the defendant "was advised by competent counsel [and] ... made aware of the nature of the charge against [him or her]," and was "fully aware of the direct consequences" of the plea. Brady v. United States, 397 U.S. 742, 755 (1970).

Fisher claims that both trial judges threatened him with a maximum sentence if he did not take the plea. Fisher specifically states that Justice Farber, his second trial judge, threatened him off-the-record. There is nothing in the record, however, to indicate either that Justice Farber made any such threat or that Fisher's waiver was not knowing and voluntary. Rather, the plea

16

transcript makes clear that Justice Farber stated plainly the nature of the charges, what Fisher was giving up by accepting a plea, and what the result would be. Justice Farber explicitly addressed the issue of Fisher's prior coerced plea: "Whatever it was that the prior Judge told you about sentencing and possibilities of sentencing following the trial and anything else, put that completely out of your mind. You're in front of a different Judge. It may even be me who tries the case." (Ex. H at 6:16-20.)

Fisher makes no specific claims as to Freedman's conduct with regard to the plea. Apart from accusing Freedman of being a crony of the court, failing to conduct pretrial discovery and evidentiary hearings, and failing to raise his speedy trial claim, Fisher does not articulate any particular ways Freedman's conduct undermined the validity of his waiver. Fisher cannot establish that his counsel's allegedly deficient performance resulted in a waiver that was not knowing and voluntary. Therefore, Fisher cannot establish that his waiver was invalid as to a claim of ineffective assistance of plea counsel.

Finally, even if Fisher's waiver were unenforceable, New York procedural rules bar Fisher from now raising his ineffective assistance of plea counsel claim in the state appellate process. First, he cannot again seek leave to appeal his conviction because he already filed the one application for leave to appeal to the Court of Appeals to which he is entitled. C.P.L § 450.10(1) (preserving one appeal as of right from a criminal conviction); 22 New York Codes, Rules and Regulations ("N.Y.C.R.R.") § 600.8(b), 550.9 *et seq.* (an application for a certificate granting leave to appeal a criminal case shall be made within 30 days after service of judgment on applicant).

Second, while New York State law provides for collateral review of a conviction under C.P.L. § 440.10, such review is not available if the claim could have been raised or was actually

17

decided on direct review. See C.P.L. § 440.10(2)(a), (c). See also Harrison v. Smith, No. 05 Civ. 5953, 2012 WL 3822211, at *3 (S.D.N.Y. Sept. 4, 2012) (claims of ineffective trial counsel not raised on direct appeal were procedurally defaulted under New York state law). Here, the Appellate Division reviewed Fisher's ineffective assistance of plea counsel claim on direct review, albeit under state law and as raised in Fisher's *pro se* supplemental brief. See People v. Fisher, 925 N.Y.S.2d 817 (1st Dep't 2011). Therefore, the claim cannot be brought again in a C.P.L. § 440.10 motion. Fisher's claim of ineffective assistance of plea counsel is deemed exhausted but procedurally defaulted.

### 2.  Excessive Sentence

Fisher's excessive sentence claim may be deemed exhausted but procedurally defaulted as well. First, Fisher's claim is procedurally defaulted due to his signed waiver, which carved out an exception only for an unlawful sentence, not an excessive sentence. See Parilla, 8 N.Y.3d at 659. Second, as noted above, while New York state law provides for collateral review of a conviction under C.P.L. § 440.10, such review is not available if the claim could have been raised or was actually decided on direct review. See C.P.L. § 440.10(2)(a), (c). Here, the Appellate Division reviewed, albeit under state law, Fisher's excessive sentence claim on direct review and concluded that Fisher had "made a valid waiver of his right to appeal, which forecloses his claim that his sentence is excessive. As an alternative holding, we perceive no basis for reducing the sentence." People v. Fisher, 925 N.Y.S.2d 817 (1st Dep't 2011). Because his claim was heard on direct review, the claim cannot be brought again in a C.P.L. § 440.10 motion. Thus, Fisher's claim of an excessive sentence is deemed exhausted but procedurally barred.

### E.  Overcoming Procedural Default

A petitioner may overcome a procedural bar only by demonstrating either cause for the default and resultant prejudice, or that the failure to consider the federal *habeas* claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); see also DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006) ("Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in *habeas* only if the petitioner can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (brackets omitted) (quoting Bousley v. United States, 523 U.S. 614, 622 (1998))).

### 1.  Ineffective Assistance of Plea Counsel

In his *habeas* petition, Fisher did not articulate any explanation for his failure to raise the ineffective assistance of plea counsel claim before the highest state court in federal constitutional terms. He did not point to any objective factor that was the cause of this failure. Murray v. Carrier, 477 U.S. 478, 488, 496 (1986) (holding that cause must "ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Cause cannot be established by merely demonstrating counsel's failure to recognize or raise a claim. Murray, 477 U.S. at 486. Thus, Fisher did not show cause for his failure to raise in constitutional terms his ineffective assistance of plea counsel claim.

Neither can Fisher establish prejudice. Fisher's ineffective assistance of plea counsel claim is meritless and, therefore, unable to sustain a finding of prejudice. See Ramos v. Racette, 11 Civ. 1412 (JG), 2012 WL 12924, at *16 (E.D.N.Y. Jan. 4, 2012) (Because [petitioner]'s … claim fails on the merits, he cannot show prejudice from his procedural default in state court, and

19

thus he is procedurally barred from raising this claim in a federal habeas petition as well."); James v. Smith, 06 Civ. 6441 (JG), 2008 WL 755601, at *5 (E.D.N.Y. Mar. 20, 2008) (finding no  prejudice when petitioner's claim failed on the merits). Fisher makes only a few remarks about the deficient representation of his second plea counsel, Freedman. He describes him as a "crony" and friend of the court. (Petition at 5; Ex. O at 2; Ex. K at 13, 14; Ex. S at 7.) Fisher also claims that Freedman should have conducted pre-trial discovery, requested an evidentiary hearing, and raised a more "meritable defense." (Ex. K at 5; Ex. O at 3.) None of these claims is meritorious.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). Plea counsel have a "constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). But to succeed on an ineffective assistance of counsel claim under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), a *habeas* petitioner must demonstrate that his plea counsel provided such ineffective assistance that there is a reasonable probability that the petitioner would not have agreed to the plea but for his counsel's failures. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Fisher has failed to make such a demonstration.

Fisher offers no evidence of cronyism, other than the fact that Freedman recently had appeared before Justice Farber on a high-profile case, and Freedman was a court-appointed lawyer. Nor does Fisher clearly articulate how Freedman's cronyism affected his representation. Fisher argues that had his prior appellate counsel, Kinigstein, remained on his case, it would have been dismissed with prejudice.

The evidence in the record suggests that Freedman represented Fisher, at a minimum, in accordance with the reasonable standards of the profession. During Freedman's tenure as counsel, Fisher pled to a sentence four years lower than in his original plea. See e.g., Puello v. U.S., 03 Civ. 3757 (AKH), 2004 WL 42282, *2 (S.D.N.Y. Jan. 7, 2004) (noting counsel's ability to obtain a four-year sentence reduction as evidence of doing an "extraordinary job"). Freedman emphasized in the plea hearing that alcohol had played a role in the crime and that Fisher, during his incarceration, had come to see the error of his ways. Because Fisher cannot demonstrate that any relationship between Freedman and Justice Farber harmed his representation, he cannot show prejudice.

Nor can Fisher demonstrate that counsel's failure to conduct pre-trial discovery, request an evidentiary hearing, or raise a more "meritable" defense demonstrated a deficiency in Freedman's professional responsibility. Fisher suggests that pre-trial discovery and an evidentiary hearing would have helped to resolve conflicting points of view with regard to the facts of the case. Fisher also claims that if Freedman had raised a claim for a statutory violation of his right to a speedy trial, his case would have been dismissed.[8] But these decisions are well within the scope of discretion afforded to an attorney. Decisions regarding pre-trial investigation are treated with the same level of deference as counsel's judgments more generally. Harris v. Hulihan, 11 Civ. 3019 (RA)(MHD), 2012 WL 5265624, at *11 (S.D.N.Y. Aug. 8, 2012) report and rec. adopted, 2012 WL 5266175 (Oct. 23, 2012). Even if Freedman strongly recommended that Fisher accept the plea, this would not have been evidence of ineffective assistance of counsel, particularly in light of Fisher's criminal history, his conflicting statements about his

---

[8] The court interprets Fisher's "meritable defense" claim as addressing Freedman's failure to raise a C.P.L. § 30.30 motion to dismiss for violation of his right to a speedy trial.

relationship to the victim, and the potential sentence he faced. See O'Kane v. Kirkpatrick, 09 Civ. 05167 (HB)(THK), 2011 WL 3809945, at *13 (S.D.N.Y. Feb. 15, 2011) (finding petitioner's ineffective assistance of counsel claim without merit because, given petitioner's lengthy criminal history and the substantial evidence against him, a recommendation to accept a plea was "rational advice").

Fisher ultimately decided to accept the plea and admitted in court that he did not know the woman he attempted to rape and that he did not have legal authority to be in the residence, issues for which he now claims further investigation should have been conducted. Fisher cannot establish that but for the professional failing of his plea counsel, he would not have accepted the plea offered to him; as such, Fisher has not established that his ineffective assistance of plea counsel claim has any merit. Because Fisher's ineffective assistance of counsel claim is without merit, Fisher cannot demonstrate that he has been or would be prejudiced by the procedural default.

Neither can Fisher demonstrate that a constitutional violation has resulted in the conviction of one who is actually innocent. Fisher twice pled guilty to the robbery and attempted rape. His appellate counsel, and Fisher himself in his *pro se* briefs, argued only that the sentence should be reduced. Fisher never provided any evidence of his innocence. Because Fisher cannot establish cause for default and prejudice, or a fundamental miscarriage of justice, this Court will not review his ineffective assistance of plea counsel on the merits.

### 2. Excessive Sentence

Neither can Fisher overcome the procedural bar with regard to his excessive sentence claim. In his *habeas* petition, Fisher did not submit any justification for failure to raise the excessive sentence claim in his appellate brief in federal constitutional terms. Murry, 477 U.S. at

22

488, 496. He did not identify any legal or factual basis for a federal constitutional excessive sentence claim that was not reasonably available to his counsel. <u>Murray</u>, 477 U.S. at 488. Nor did he identify any interference by officials that would have made compliance with the procedure "impracticable." <u>Id.</u> Fisher, therefore, cannot establish cause for his procedural default with regard to his excessive sentence claim.

Neither can Fisher establish prejudice. Fisher's excessive sentence claim is clearly meritless and, therefore, cannot show prejudice based on the procedural default. <u>See</u> <u>Ramos</u>, 2012 WL 12924, at *16 (E.D.N.Y. Jan. 4, 2012). No constitutional issue is presented for *habeas* review when a sentence is within the state statutory range. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). A federal court considering a *habeas* petition from a state prisoner has no discretionary power to reduce a sentence: "a claim that a sentence should be reduced in the interest of justice does not allege a violation of a federally protected right." <u>Paul v. Ercole</u>, 07 Civ. 9462 (CM)(HBP), 2010 WL 2899645, at *5 (S.D.N.Y. June 10, 2010) (collecting cases), <u>report and rec. adopted</u>, 2010 WL 2884720 (July 21, 2010).

Moreover, the Eighth Amendment, which forbids cruel and unusual punishments, <u>Ewing</u> <u>v. California</u>, 538 U.S. 11, 20 (2003), prohibits only the imposition of a sentence that is "grossly disproportionate to the severity of the crime," <u>Rummell v. Estelle</u>, 445 U.S. 263, 271 (1980). Here, a sentence of 13 years for a conviction for first degree burglary and first degree attempted rape by an individual with a history of prior convictions, including felonies, is not grossly disproportionate. <u>See e.g.</u>, <u>Kirk v. Burge</u>, 646 F. Supp. 2d 534, 550 (S.D.N.Y. 2009) (25-year sentence for armed robbery with eleven prior convictions, including four felonies, not grossly disproportionate); <u>King v. Cunningham</u>, 442 F. Supp. 2d 171, 183 (S.D.N.Y. 2006) (a plea resulting in a sentence of nine years as a predicate felony offender being sentenced for a Class B

violent felony did not raise a constitutional issue); <u>Acosta</u>, 326 F. Supp. 2d at 524 (a plea resulting in a sentence of eight to sixteen years for a Class B violent felony offense posed no federal constitutional violation). Fisher's constitutional excessive sentence claim is clearly meritless and, therefore, he cannot establish prejudice from the procedural bar.

Neither can Fisher demonstrate that a constitutional violation has resulted in the conviction of one who is actually innocent. As noted above, Fisher twice pled guilty to the robbery and attempted rape. Accordingly Fisher has not (1) shown cause for failing to raise his excessive sentence claim in constitutional terms or demonstrated that actual prejudice will result from barring *habeas* review of this claim, or (2) demonstrated that failure to consider the claim will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. Therefore, Fisher has not overcome the procedural default doctrine, and this Court will not review the excessive sentence claim on the merits.

**III.    Merits Review**

After exhaustion, but before a federal court can issue a writ of *habeas corpus*, a petition must satisfy a "difficult to meet[] . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted). Under the AEDPA, *habeas* relief may be granted only when the state court's decision:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

24

A state court decision is "contrary to" clearly established federal law "if the state court 'applied a rule that contradicts' that precedent, or reached a different result than the Supreme Court on facts that are 'materially indistinguishable.'" Mannix v. Phillips, 619 F.3d 187, 195 (2d Cir. 2010) (internal alterations omitted) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). As long as the state court decision applied the correct legal rule to the facts of a petitioner's case, it is not subject to *habeas* review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. Williams, 529 U.S. at 406.

A state court decision involves an "unreasonable application" of clearly established federal law if the court identified the legal rule set forth in governing Supreme Court cases, but unreasonably applied the rule to the facts of the case. Id. at 407-08. A federal court may grant *habeas* relief only when the state court decision, as it pertains to any issue of federal law, was "objectively unreasonable" in light of relevant precedent; thus, in construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. Id. at 409-13; see also Besser v. Walsh, 601 F.3d 163, 178 (2d Cir. 2010) ("The proper inquiry is not whether a state court's application of, or refusal to extend, the governing law was erroneous, but whether it was 'objectively unreasonable.'" (quoting Williams, 529 U.S. at 409-10)). "[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001).

Fisher's *habeas* petition presents four exhausted claims: (1) Fisher's constitutional right to a speedy trial was violated; (2) both of Fisher's appellate counsel were ineffective; (3) his

waiver with regard to sentence was not knowing and voluntary; and (4) his sentence was unlawful.

### A.  Constitutional Speedy Trial Claims

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …." U.S. Const. amend. VI. The Supreme Court in Barker v. Wingo, adopted a balancing test, identifying four factors to guide a court's determination of whether a defendant was denied the right to a speedy trial: (1) length of delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the defendant. See U.S. v. Ghailani, 751 F. Supp. 2d 515, 528 (S.D.N.Y. 2010) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). None of these factors is necessary or sufficient for a finding of a deprivation of the right to a speedy trial. Rather courts must "engage in a difficult and sensitive balancing process." Barker, 407 U.S at 533.

Before the four factors are weighed, a court must first determine whether the length of the delay is "presumptively prejudicial." United States v. Leaver, 358 F. Supp. 2d 255, 264 (S.D.N.Y. 2004) (citing Barker, 407 U.S. at 530)). The constitutional right to a speedy trial attaches when a defendant is arrested or indicted, whichever comes first. Ghailani, 751 F. Supp. 2d at 529 (citing United States v. Marion, 404 U.S. 307, 320 (1971)). Until there is some delay that is presumptively prejudicial, there is no need for inquiry into the other factors. Barker, 407 U.S. at 530. The Court of Appeals for the Second Circuit has noted that there is a "general consensus that a delay of over eight months meets this standard, while a delay of less than five months does not." United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992); see also Leaver, 358 F. Supp. 2d at 264.

Fisher committed the crimes on January 15, 2005. He was indicted on January 27, 2005, and pled guilty on October 27, 2005. This is a period of nearly 10 months. The October 2005

plea, however, was vacated on November 24, 2009, upon the order of the Court of Appeals. People v. Fisher, 70 A.D. 3d 114 (1st Dep't 2009). Fisher pled guilty again on March 2, 2010, less than four months after the prior plea was vacated.

It does not appear on the record that Fisher is contending that the second period of time, between the vacating of his first plea and his second plea, was a violation of his right to a speedy trial. Even if he were, the four month period is not presumptively prejudicial, and the Court need not consider the Barker factors for this period of time.

## 1. Ten-Month Delay[9]

Each of the arguments raised by Fisher in his briefs points to the initial delay, between his arrest and his first plea, as the basis for his speedy trial claim. According to the Second Circuit standard, this delay in Fisher's trial is presumptively prejudicial at nearly 10 months long. The Court, therefore, will address the Barker factors for this period.

### a. Length of Delay

At 10 months, Fisher's trial delay was just beyond this Circuit's outer boundary of eight months for presumptive prejudice. The Court of Appeals, however, has found that much longer delays were not violative of a defendant's Sixth Amendment right to a speedy trial. See United States v. Esquilin, 205 F.3d 1325 (2d Cir. 2000) (19-month delay did not violate the Sixth amendment); United States v. Vasquez, 918 F.2d 329, 338 (2d Cir. 1990) (26-month delay did not violate the Sixth Amendment); United States v. Patterson, 135 Fed. Appx. 469, 473-74 (2d Cir. 2005) (9-month delay does not violate Sixth Amendment absent a showing of prejudice); U.S. v. Goldman, 439 F. Supp. 352, 357 (S.D.N.Y. 1977) (29-month delay between indictment

---

[9] Fisher's ten-month speedy trial claim may be moot given the Appellate Division's decision to vacate his prior conviction. To provide a thorough analysis, however, the Court has considered this claim on the merits.

and trial not in and of itself unreasonable); <u>Castillo v. United States</u>, 07 Civ. 3401 (KMW),

2009 WL 4250512, at *5 (S.D.N.Y. Nov. 30, 2009) (petitioner's claim that a 9-month delay

violated his Sixth Amendment right to a speedy trial was "weak"). The period of time between

Fisher's indictment and his plea, on its own, is insufficient to demonstrate a Sixth Amendment

violation.

### b.  Reason for the Delay

Although the "ultimate responsibility for [delay] must rest with the government rather

than with the defendant," a "more neutral reason [for delay] such as negligence or overcrowded

courts" is weighed less heavily than a deliberate attempt by the government to delay

proceedings. <u>Barker</u>, 407 U.S. at 531; <u>see also</u> <u>United States v. McGrath</u>, 622 F.2d 36, 41 (2d

Cir. 1980) (noting that there was no evidence of bad faith or deliberate delays on the part of the

government). Here, there is no evidence that the government was attempting to delay the trial as

a strategy, and some of the delay is attributable to Fisher. First, from the end of February 2005 to

the middle of May 2005, the parties were engaged in motion practice initiated by Fisher's

counsel. In July 2005, the court granted Fisher a <u>Huntley</u> hearing, thereby requiring the

government to prepare for that hearing. <u>See</u> <u>Davis v. McLaughlin</u>, 122 F. Supp. 2d 437, 443

(S.D.N.Y. 2000) (finding no willful attempt by the State to delay when the time included, *inter*

*alia*, conducting pre-trial conferences and hearings). Finally, in September 2005, the government

answered not ready on the basis that an eyewitness necessary for trial was in Israel and would

not return until the end of October. <u>See</u> <u>Castillo v. United States</u>, 07 Civ. 3401 (KMW), 2009

WL 4250512, at *5 (S.D.N.Y. Nov. 30, 2009) (recognizing the need for an essential witness was

a legitimate reason for delay). Given these factors, the reasons for the delay do not support

Fisher's claim of a Sixth Amendment speedy trial violation.

### c. Assertion of the Right

Fisher did manifest an interest in his speedy prosecution. At the calendar call on October 27, 2005, Fisher attempted to file, *pro se*, a C.P.L. § 30.30 motion, but Justice Goodman refused to accept it, stating, "I don't take *pro se* motions." (Ex. C at 7.) Fisher's plea counsel, Klein, informed the court that he too had filed a § 30.30 motion, but Justice Goodman denied all timeliness motions without reviewing them. Justice Goodman also told Fisher's counsel at a prior conference in September 2005 that "if you walk in on [the next appearance] date with a speedy trial motion, I will be very upset." (Id. at 13.) Therefore, though Fisher's assertion of his right may not have been vigorous, this factor does weigh in Fisher's favor.

### d. Prejudice to the Defendant

Fisher has failed to make any specific allegations of prejudice in light of this 10-month delay. Fisher does not argue, nor is there evidence to suggest, that the delay hindered his counsel's ability to obtain evidence of a lease agreement or a personal relationship with the victim, both defenses raised by Fisher. Nor does Fisher argue that witnesses were no longer available due to the delay. Absent any specific identification of prejudice, the 10-month delay between Fisher's indictment and first plea did not violate his constitutional right to a speedy trial. See e.g., Patterson, 135 F. App'x at 473-74.

### 2. Appellate Delay

Some courts have considered a petitioner's claim of a speedy trial violation to encompass the entire period following a vacated sentence. See e.g., Hancock v. Rivera, 09 Civ. 7233 (CS)(GAY), 2012 WL 3095269, at *5 (S.D.N.Y. Apr. 14, 2012) (considering the period from the initial criminal charge to the plea on the second indictment following an appeal and vacated sentence). Because one of Fisher's C.P.L. § 30.30 motions was filed in March 2010, and in light

of the liberal construction of a *pro se* petition, the Court will also consider whether there was a speedy trial violation due to appellate delay. Even when the Court considers the entire period from Fisher's indictment on January 27, 2005, to his second plea on March 23, 2010, Fisher, though again meeting the presumptively prejudicial standard at approximately five years and three months, is still unable to demonstrate that the balancing of the <u>Barker</u> factors weighs in his favor.

### a.  Length of Delay

The largest portion of the delay between Fisher's 2005 indictment and his 2010 plea was Fisher's appeal to the Appellate Division. "[I]t is now clear in this circuit that substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal *habeas* jurisdiction." <u>Cody v. Henderson</u>, 936 F.2d 715, 718-19 (2d Cir. 1991) ("[W]e have acknowledged that the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal."). <u>See</u> <u>Simmons v. Reynolds</u>, 898 F.2d 865, 868 (2d Cir. 1990); <u>see also</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 393-94 (1985).

The Court of Appeals for the Second Circuit has not "define[d] precisely, a specific interval of time after which a *habeas* petition based on delay . . . would excuse compliance with the federal exhaustion requirement," but it has counseled that "[t]he doctrine of exhaustion . . . does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid . . . . " <u>Simmons</u>, 898 F.2d at 870; <u>accord</u> <u>Diaz v. Henderson</u>, 905 F.2d 652, 654 (2d Cir. 1990) ("*habeas* petitions . . . need to be brought as soon as the appellate delay becomes unreasonable"). "Nevertheless, . . . the mere lapse of time is a[n] [in]sufficient basis for" *habeas* relief. <u>Mathis v. Hood</u>, 937 F.2d 790, 794.

30

Fisher filed his *pro se* Notice of Appeal on December 22, 2005. On September 26, 2008, Fisher, through counsel, filed his appellant's brief with the Appellate Division. The government submitted an opposition brief on January 7, 2009. Fisher submitted a reply brief on January 16, 2009, and the Appellate Division issued its decision on November 24, 2009. It is unclear to whom the delays are attributable during this four-year period. Regardless, this length of time is insufficient to establish a violation of Fisher's due process or Sixth Amendment rights. See Vazquez v. Bennett, 00 Civ. 3070 (AKH), 2002 WL 619282, at *5 (S.D.N.Y. Apr. 17, 2002) (finding "four-year delay in deciding petitioner's direct appeal did not violate his due process rights"); Vasquez v. Reynolds, 00 Civ. 0862 (RMB)(KNF), 2002 WL 417183, at *6-7 (S.D.N.Y. Mar. 18, 2002) (finding delay in appeal of four years and nine months, "while certainly longer than ideal, is shorter than the delay in most cases in which the U.S. Court of Appeals for the Second Circuit has found a denial of due process"); cf. Simmons, 898 F.2d at 870 (finding six year delay in state court's consideration of petitioner's criminal appeal constituted inordinate delay).

### b.  Reason for the Delay

The precise reasons for the delay between the filing of Fisher's *pro se* Notice of Appeal in December 2005, and the Appellate Division's decision in November 2009, are unclear. Fisher makes no assertion as to improper conduct on the part of the government, nor is there any independent evidence to suggest the same. Given the fact that there is little evidence to suggest whether one party or the other was primarily responsible for the delay, this factor weighs in neither party's favor.

### c. Diligence in Asserting Right

In all, Fisher moved twice to dismiss the indictment on speedy trial grounds: once before his first conviction was reversed and once before he entered his second plea. And, Fisher asserted his right to a speedy trial throughout his *pro se* appellate and *coram nobis* documents. He does not, however, specifically address the length of his appeal. Though the Court is considering this ground due to the liberal construction of a *pro se* petition, Fisher's failure to assert this specific claim clearly and consistently over the course of his criminal proceeding and appeal, or in his *habeas* petition, weighs against him here.

### d. Prejudice

Even if the length of time for Fisher's appeal was deemed an inordinate delay, Fisher does not allege that such delay in prosecution prejudiced him in any way. Here, Fisher would need to demonstrate that but for the delay, "the result of the appeal would have been different." Simmons, 898 F.2d at 868. Fisher's first appeal, however, was successful. The Appellate Division reversed the judgment of conviction and vacated Fisher's plea. Because he secured a reversal of the judgment of conviction on appeal, he cannot now claim that he was prejudiced by any delay in the initial appellate process.

The Court is aware of the inherent impairment of a defense upon retrial caused by the passage of time, namely the loss of memory by witnesses and the staling of evidence. See Barker, 407 U.S. at 532 ("Loss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown."). But absent any showing that these issues are present, the Court cannot assume prejudice on the basis of delay alone. Fisher has presented no specific evidence that his second conviction, resulting from his plea, was the result of a loss of evidence or witnesses due to any appellate delay.

32

Accordingly, Fisher has not demonstrated the prejudice he must in order to justify the extraordinary remedy of unconditional release. Because the Appellate Division was not objectively unreasonable in its holding in light of the <u>Barker</u> analysis, Fisher's *habeas* claim on this ground should be denied.

### B.  Ineffective Assistance of Appellate Counsel

Defendants have a Sixth Amendment right to counsel. For the purposes of *habeas* review, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), is the relevant "clearly established Federal law" in an ineffective assistance of counsel claim. 28 U.S.C. § 2254(d)(1); <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011); <u>Lynn v. Bliden</u>, 443 F.3d 238, 247 (2d Cir. 2006). A petitioner is not, however, required to show that the particular theory of ineffective assistance of counsel also is "clearly established." <u>Aparicio</u>, 269 F.3d at 95 n.8. The <u>Strickland</u> test applies to appellate as well as trial counsel. <u>See, e.g.</u>, <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).

Evaluation of an ineffective assistance claim on *habeas* review is rooted in the two-pronged test articulated in <u>Strickland</u>. <u>See</u> <u>Harrington</u>,131 S. Ct. at 785 (in a *habeas* petition based on ineffective assistance of counsel, the federal court reviews whether the state court decision "involved an unreasonable application of" <u>Strickland</u>). The first prong considers whether counsel's performance was objectively unreasonable, maintaining that any errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. Thus, "strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable." <u>Id.</u> at 690; <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003) (there is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"); <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955) (when reviewing a *habeas*

33

petitioner's claim of ineffective assistance, counsel's conduct is presumptively "sound trial strategy"); Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citations and internal quotations marks omitted)). The petitioner has the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).

Under the second prong, the petitioner must establish prejudice, which means showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 446 U.S. at 693, 687). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful" before the state's highest court. Hemstreet v. Greiner, 367 F.3d 135, 142 (2d Cir. 2004) (quoting Mayo, 13 F.3d at 534), vacated on other grounds, 378 F.3d 265 (2d Cir. 2004).

Both prongs are necessary to meeting the petitioner's burden. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). "Surmounting Strickland's high bar is never an easy task." Harrington, 131 S. Ct. at 778 (citation omitted). Rigorous and "highly deferential," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001), the Strickland standard seeks to avoid the lessons of hindsight, Strickland, 466 U.S. at 689. Analysis of an ineffective assistance claim focuses on the fundamental fairness of the trial

and asks whether a breakdown of the adversarial process occurred, rendering the result "unreliable." Strickland, 466 U.S. at 696.

A petitioner who brings a *habeas* claim based on ineffective assistance of counsel has a higher burden than a defendant on direct appeal raising those same claims. Harrington, 131 S. Ct. at 785. "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id; Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (an objectively unreasonable application involves "[s]ome increment of incorrectness beyond error" (citation omitted)). Indeed, "[f]ederal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. at 788. See Burt v. Titlow, __ S. Ct. ___, 2013 WL 5904117, at *2 (Nov. 5, 2013) (when reviewing a state prisoner's claim of ineffective assistance of counsel, Supreme Court cases require that the federal court use a "doubly deferential" standard); (Knowles v. Mirzayance, 556 U.S. 111, 112, 124 (2009) (when the "highly deferential" standards created by Strickland and § 2254(d) are applied in tandem, the review is "doubly" deferential). Under this highly deferential standard, federal *habeas* relief is precluded if "fairminded jurists could disagree" on the correctness of the state court's decision. Harrington, 131 S. Ct. at 786.

Construed liberally, Fisher's *habeas* petition points to four grounds for his ineffective assistance of appellate counsel claim: his counsel failed to: (1) argue that Fisher was improperly sentenced as a second felony offender; (2) argue that Fisher's constitutional and statutory speedy trial rights were violated; (3) object to Fisher's sentence or to argue that it was cruel and unusual punishment; and (4) argue that his plea counsel were ineffective. These arguments are unavailing.

### 1.   Failure to Argue Second Felony Offender Claim

While Respondent contends that Fisher waived his right to appeal his conviction, the signed waiver explicitly exempts "a challenge to the legality of the sentence promised by the judge." Under New York law, the legality of a sentence may always be challenged. People v. Parilla, 8 N.Y.3d 654, 659 (2007). Fisher argues that he was improperly sentenced based on his wrongful designation as a second felony offender. This is an argument challenging the legality of his sentence. Therefore, it is not waived.

Nonetheless, Fisher's claim that his appellate counsel should have raised the second felony argument is without merit. Fisher misunderstood the applicable New York state law. Fisher appears to argue that his prior burglary conviction was not a sufficient felony to justify the sentence enhancement under Penal Law § 70.06(6)(a) because his prior sentence was only one year, not *more* than one year as required by Penal Law § 70.06(1)(b)(i). Penal Law § 70.06(1), however, states that to be designated a second felony offender one must be convicted of a felony after having been subjected to one or more predicate felony convictions. Penal Law § 10.00(5) defines a felony as any offense for which a term of imprisonment in excess of one year *may* be imposed. The length of the sentence *actually* imposed is immaterial. Fisher's prior conviction was a third degree burglary conviction, a class D felony, for which a sentence of up to seven years may be imposed. Penal Law § 70.00(2)(d). Fisher's designation as a second felony offender was not unlawful. Therefore, his appellate counsel cannot be faulted for failing to raise a non-meritorious claim. See Aparicio, 269 F.3d at 99 n. 10 (because a claim was meritless, counsel was not ineffective for failing to raise it); Gomez v. Brown, 655 F. Supp. 2d 332 (S.D.N.Y. 2009), adopting report and rec. (finding appellate counsel not ineffective for failing to raise a meritless claim).

36

In addition, Fisher himself raised the unlawful sentence claim in his *pro se* appellate brief. This argument, along with all of his arguments, was summarily rejected by the Appellate Division as "unreviewable on the present record, and [] without merit in any event." See People v. Fisher, 925 N.Y.S.2d 817 (1st Dep't 2011). Because Fisher had the opportunity to raise the issue himself before the court, he cannot establish that he was prejudiced by his counsel's failure to do so. See Hightower v.Kelly, 657 F. Supp. 516, 517-18 (S.D.N.Y. 1987) (finding that petitioner failed to demonstrate prejudice for an ineffective assistance of counsel claim because all of the arguments were raised either by counsel or in petitioner's *pro se* brief); see also Jackson v. Poole, 06 Civ. 00188 (PKC)(DF), 2011 WL 4901314, at *11 (S.D.N.Y. July 19, 2011) (concluding that there was no prejudice where petitioner was able to raise his claims himself on direct appeal).

## 2. Failure to Argue Constitutional and Statutory Right to Speedy Trial Violated

Fisher contends that his appellate counsel was ineffective for failing to argue on appeal that Fisher's right to a speedy trial was violated. Fisher's first appellate counsel did raise this issue in his appeal. That plea was vacated on other grounds. Fisher's second appellate counsel did not raise a speedy trial violation, and there is no evidence in the record to guide the Court in understanding counsel's reasoning.

Fisher's guilty pleas waived his right to appeal based on a statutory right to a speedy trial. See United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea."). Therefore, Fisher's counsel had no duty to present a statutory speedy trial claim on appeal as it was without merit. Furthermore, as demonstrated above, Fisher's constitutional speedy trial claim was likely to fail on the merits

because there was no delay sufficient to violate a constitutional right. Fisher cannot show that his appellate counsel unreasonably failed to raise a meritorious claim, or that he suffered any prejudice attributable to her failure to do so.

Even if Fisher's speedy trial claim was not frivolous, his appellate counsel was not obligated to raise it. Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). A petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (1994). Furthermore, reviewing courts should not "second guess reasonable professional judgments" of appellate counsel nor impose "a duty to raise every colorable claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983). Here, Fisher did not demonstrate that his appellate counsel chose to raise a less meritorious claim at the expense of a more meritorious one. Fisher has failed to demonstrate that he was prejudiced by appellate counsel's failure to raise a speedy trial claim.

### 3. Failure to Object to Sentence or Argue Sentence Violated Cruel and Unusual Punishment

Fisher's claim that his appellate counsel's performance was deficient under the Strickland standard for failure to object to his sentence or challenge it as cruel and unusual punishment is without merit. First, Fisher's second appellate counsel did ask the Appellate Division to reduce Fisher's sentence in the interest of justice. Second, as demonstrated above, Fisher's claim that his sentence was cruel and unusual punishment almost certainly would have failed given that the sentence was within the statutory bounds for the crime and that it was not grossly disproportionate to the crime committed. Therefore, counsel cannot be deemed ineffective for

not raising a claim that had little chance of success. See e.g., U.S. v. Marte, 52 F. App'x. 531,

533 (2d Cir. Nov. 21, 2002) (finding petitioner's claim of ineffective assistance of counsel for

failing to raise cruel and unusual punishment had no merit where such an argument would almost

certainly have failed).

### 4.   Failure to Raise Ineffective Assistance of Plea Counsel

Construed liberally, Fisher's *coram nobis* motion may also make the claim that his

appellate counsel was ineffective for failing to raise an ineffective assistance of plea counsel

claim. As noted above, any argument that either of Fisher's plea counsel were ineffective is

without merit. As to Fisher's first plea counsel, Klein, any claim of ineffective assistance was

rendered moot by the vacating of his first plea. He received all the relief available to him. As to

his second plea counsel, Freedman, Fisher failed to provide any specific evidence of "cronyism"

or to establish that he would not have pled guilty but for his plea counsel's failure to conduct pre-

trial discovery or raise a more meritable defense. As this claim is meritless, appellate counsel

cannot be faulted for failing to raise it. See e.g., Marte, 52 F. App'x. at 533.

Therefore, in light of Fisher's failure to provide sufficient evidence either of his appellate

counsel's deficient performance as counsel or any resulting prejudice, the Appellate Division's

denial of Fisher's ineffective assistance of appellate counsel claim was not an objectively

unreasonable application of Strickland. This *habeas* claim is without merit.

### C.  Waiver Not Knowing and Voluntary

Fisher's counsel presented in constitutional terms the argument that he had not knowingly

and voluntarily waived his right to challenge his sentence as excessive. Counsel argued that a

valid waiver requires "an intentional relinquishment or abandonment of a known right or

privilege." (Ex. J at 13, citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938).) In addition, counsel

noted that "[a]ny ambiguity in the waiver provisions must be construed strictly against the State …." (Id. at 14.) The Appellate Division ultimately held that Fisher's waiver was valid, thereby foreclosing his claim that his sentence was excessive. People v. Fisher, 925 N.Y.S.2d 817 (1st Dep't 2011).

    A guilty plea must be knowing and voluntary. Puckett v. United States, 556 U.S. 129, 136 (2009). A knowing and voluntary waiver of the right to appeal is generally enforceable. United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). "The knowing and voluntary nature of the waiver can be established by a written waiver provision in an agreement to which the Court draws a defendant's attention during the plea hearing. Jimenez v. United States, 262 F. Supp. 2d 85, 87 (S.D.N.Y. 2003) (citing United States v. Blackwell, 199 F.3d 623, 626 (2d Cir. 1999)); see also Berdecia v. Lacy, No. 99 Civ. 11309 (SAS), 2000 WL 1072306, at *6 (S.D.N.Y Aug. 2, 2000) (waiver knowing and voluntary where defendant did not voice an objection and acknowledged understanding on the record).

Here, Justice Farber explicitly stated during the plea proceedings that Fisher's plea would "completely end[] any appellate rights … with respect to plea or sentence." (Ex. H at 10:15-16.) Furthermore, Fisher, on advise from his attorney, executed the written waiver. Fisher indicated that he had fully discussed the waiver with his attorney. The written waiver stated:

> I hereby waive my right to appeal from this judgment of conviction. I understand that this waiver does not apply to any of the four following issues: a constitutional speedy trial claim; a challenge to the legality of the sentence promised by the judge; an issue as to my competency to stand trial; or the voluntariness of this waiver. However, I understand and agree that I hereby give up all other appellate claims.

(Ex. J at 10.) While Justice Farber's statement regarding the scope of the waiver may have been overly broad, Fisher's written waiver, executed in the presence of his attorney, explicitly stated what rights of appeal would be excluded from the waiver. An excessive sentence claim was not

one of them. There is no indication that Fisher did not understand the terms of the waiver or did not freely accept it in exchange for a reduced sentence.

The Appellate Division's finding that Fisher had made a valid waiver of his right to appeal his sentence as excessive was not an objectively unreasonable application of federal law. Furthermore, the Appellate Division, in an alternate holding, stated that Fisher's excessive sentence claim was without merit. Therefore, even if the Appellate Division's decision regarding the waiver was in error, it was harmless error, because the court heard Fisher's excessive sentence claim and determined it was without merit. Accordingly, he is not entitled to *habeas* relief based on his waiver claim.

### D.  Unlawful Sentence Violates the Eighth Amendment

In his *coram nobis* petition, Fisher argued that he was subjected to cruel and unusual punishment because he was improperly adjudicated a second felony offender, thereby increasing the allowable sentence. This claim is without merit. As noted above, Fisher misunderstood the applicable New York state law. Fisher's prior conviction was a third degree burglary conviction, a class D felony, for which a sentence of up to seven years may be imposed. Penal Law § 70.00(2)(d). As such, Fisher's designation as a second felony offender was not unlawful under Penal Law § 70.06(6)(a). But, even if there had been error in this statutory interpretation, this Court could not grant relief. See Estelle, 502 U.S. at 67-68 ("federal *habeas* corpus relief does not lie for errors of state law").

Furthermore, there is no meritorious constitutional claim. The Eighth Amendment, which forbids cruel and unusual punishments, Ewing, 538 U.S. at 20, prohibits only the imposition of a sentence that is "grossly disproportionate to the severity of the crime," Rummell, 445 U.S. at 271.  Even if Fisher had been improperly designated a second felony offender, his sentence did

not violate the Eighth Amendment because it was not grossly disproportionate to the crimes committed: 13 years for attempted rape and burglary. Therefore, the Appellate Division's denial of Fisher's unlawful sentence claim was not an objectively unreasonable application of federal law, and *habeas* relief cannot be granted on this claim.

## CONCLUSION

For these reasons, I recommend that Fisher's petition for a writ of *habeas corpus* be DENIED as to all claims. Because Fisher has not made a substantial showing of the denial of a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

I further recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith and, therefore, that *in forma pauperis* status be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

\*       \*       \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken at the Thurgood Marshall Courthouse, 40 Foley

Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must

be addressed to Judge Oetken. The failure to file these timely objections will result in a waiver of

those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b),

72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____

SARAH NETBURN

United States Magistrate Judge


DATED:      New York, New York
            November 20, 2013


cc:         Joseph Fisher (_By Chambers_)
            05A6162
            Barehill Correctional Facility
            Caller Box 20
            181 Brand Road
            Malone, NY 12953